C. McChord CHRISTIE,
Plaintiff-Appellant,

v.

Garth MARSTON et al.,
Defendants-Appellees.

No. 76–1780.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1977.

Decided March 4, 1977.

Charles J. Barnhill, Jr., George F. Galland, Jr., Chicago, Ill., for plaintiff-appellant.

Leonard Schaitman, Neil H. Koslowe, Civ. Div., Appellate Section, Dept. of Justice, Washington, D. C., Samuel K. Skinner, U. S. Atty., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, and SWYGERT and PELL, Circuit Judges.

FAIRCHILD, Chief Judge.

This appeal is before us because a 69 year old federal employee, who has served with distinction for over thirty years and who, by law, is entitled to continue in his employment until at least age 70,[1] has been told that, regardless of the validity of his claim to be suffering on-the-job age discrimination, he is "too old" to seek relief under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (hereinafter, "ADEA"). We have found no evidence that Congress intended such illogic, nor that any purpose would be served by it, and so, we decide that, at the very least, federal employees must be allowed to pursue ADEA claims until reaching the retirement age of 70.[2]

Appellant, C. McChord Christie, is a 69 year old Senior Field Examiner with the

---

1. 5 U.S.C. § 8335(a), by establishing 70 as the age of mandatory retirement for federal civil employees implies that until they reach that age, these employees are entitled to a presumption of continued fitness to serve. The statute provides in pertinent part:

    (a) Except as otherwise provided by this section, an employee who becomes 70 years of age and completes 15 years of service shall be automatically separated from the service.

2. We do not here deal with those other federal employees (notably those in the armed services and law enforcement agencies) who, because of other statutes or regulations, are subject to mandatory retirement at an age earlier than 70, and accordingly, we express no opinion as to their rights under the ADEA.

Federal Home Loan Bank Board (hereinafter, "FHLBB") in Chicago. He has been a federal employee for over thirty years, and throughout that time has been cited for distinguished service.[3] Beginning in 1971, Mr. Christie found himself being urged to take early retirement from his job with the FHLBB.[4] At first, this involved nothing more than two conversations with named defendant, Victor S. Meller, asking if Mr. Christie had considered early retirement. But, according to Mr. Christie, as his decision not to take early retirement became apparent, his superiors retaliated by ignoring him for promotions because of his age, denying him training for better jobs because of his age, and generally treating him less favorably than younger Board employees.

By the summer of 1975, Mr. Christie's dissatisfaction with his treatment was such as to prompt him to file informal, and then formal, complaints of age discrimination with the FHLBB. On August 11, 1975, the FHLBB's Director of Equal Employment Opportunity rejected the complaint, explaining that because Mr. Christie's age was over 65, the complaint was "outside the coverage of the regulations against age discrimination."[5] The Director went on to advise Mr. Christie that, while his formal complaint did not fall within the coverage of the official complaint system, he could still pursue the particular problem of his treatment through either the agency's grievance procedure or that of the American Federation of Government Employees. In any case, Mr. Christie was told, rejection of his formal complaint did represent "a final agency decision on this matter" which he was entitled to appeal to the Appeals Review Board of the Civil Service Commission or, in the alternative, by filing a civil action in federal court.

Accordingly, on September 10, 1975, Mr. Christie filed this class action with the district court. In his complaint, Mr. Christie alleges that he and other federal employees similarly situated[6] have been subject to discriminatory treatment based on their age in an attempt by defendants to force their early retirement. Such action, it is alleged, violates the Due Process Clause of the Fifth Amendment and other federal laws, rules and regulations. Monetary damages are sought as well as such equitable relief as is necessary to end "harassment" of the plaintiff class and to restore to them the employment benefits they have lost.

---

3. It is difficult not to be impressed with Mr. Christie's record. He has received countless letters of commendation over the years from his own agency, from members of the local bar whom he has assisted in particular cases, from the U.S. Attorney's Office for the Northern District of Illinois and even from the White House (the latter regarding energy saving suggestions he made in 1974). In 1974, he was nominated for the federal Employee of the Year Award.

4. Mr. Christie was eligible for early retirement under 5 U.S.C. § 8336, having reached the age of 60 and having completed twenty years of government service. But pursuant to 5 U.S.C. § 8335(a), he could not be forcibly retired until he reached age 70.

5. The regulation referred to is 5 C.F.R. § 713.-512 which authorizes Civil Service agencies to receive complaints "from any aggrieved employee or applicant for employment with the agency who believes that he or she has been discriminated against on account of age and who was at least 40 years of age but less than 65 years of age at the time of the action complained of." The regulation was of course enacted to implement the ADEA and thus, to the extent this decision finds that the age limitations of that statute are not applicable to federal employees between the ages of 65 and 70, we would expect that the regulation will henceforth be administered in accordance with this ruling.

6. Though this suit has been brought as a class action, the complaint does little to specify what individuals are to be deemed "similarly situated" to Mr. Christie. Nor does the record on appeal indicate that any order to maintain, see Fed.R.Civ.P. 23(c)(1), was issued by the district court which might have offered some guidance as to a class definition. Accordingly, this court's ruling is based on the particular facts of Mr. Christie's case, i. e., (1) a federal employee, (2) over 65 years of age, but (3) under 70 years of age, who alleges on-the-job age discrimination. We do not here reach the issue of whether individuals in different circumstances can maintain suits alleging age discrimination.

On June 16, 1976, the district court dismissed the complaint (1) because Mr. Christie, then being 68 years of age, was found too old to claim ADEA protection from age discrimination, the court ruling that only individuals between the ages of 40 and 65 were meant by Congress to be protected by the ADEA, and (2) because, by not pursuing the Civil Service or union grievance procedures outlined in the Director of Equal Employment Opportunity's letter, Mr. Christie had failed to exhaust administrative remedies as to his constitutional and other statutory claims. Mr. Christie appeals from this dismissal.

## I. *The ADEA Claim*

Section 15 of the ADEA, 29 U.S.C. § 633a, in language that is broad, but seemingly self-contained, provides the basis for Mr. Christie's claim.

> All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, United States Code, in executive agencies as defined in section 105 of title 5, United States Code (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on age.

In reviewing the district court's dismissal of the claim, the principal issue for this court to decide is whether the age limitations of section 12 of the ADEA, 29 U.S.C. § 631, which provides that,

> The prohibitions in this Act shall be limited to individuals who are at least forty years of age but less than sixty-five years of age.

are to be made applicable to section 633a. We conclude that section 631 is not applicable to section 633a.

In reaching this conclusion we have been much influenced by 5 U.S.C. § 8335(a) which, by fixing age 70 as the time for mandatory retirement of federal employees, suggests a congressional assumption that federal employees are fit and able to perform their jobs at least until attaining that age. In this light we find it most difficult to extend the section 631 age limitations to section 633a, for to do so would leave us with the illogical conclusion that Congress had decided that federal employees between the ages of 65 and 70 could not be forcibly retired from their jobs, but that they could be otherwise blatantly discriminated against in those last five years on the job, and that the strongest congressional statement against age discrimination, the ADEA, would afford them no protection.

Certainly nothing in the history of the ADEA provides an affirmative statement of Congress' intent to work such a result. Instead, we find that the age limitations of section 631 were passed seven years earlier than the section 633a amendment affording federal employees protection against age discrimination. Moreover, we find that while the language of section 633a is complete in itself, and could stand as an independent law, section 631 is critically dependent on other sections of the ADEA, sections clearly applicable (at least as originally enacted) only to the private sector. For example, section 631 in defining the scope of its age limitations starts out by referring to "[t]he prohibitions in this Act. . . ." These prohibitions are to be found in section 4 of the Act and for the most part catalog various "employer" activities which, if engaged in, will be considered unlawfully discriminatory. *See* 29 U.S.C. § 623(a), (d), (e), (f). As 29 U.S.C. § 630(b) makes clear, however, Congress was most specific in designating who would constitute the "employers" to which these prohibitions would apply. As originally passed, section 630(b) read:

The term "employer" means a person engaged in an industry affecting commerce who has twenty-five or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year: *Provided*, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The term also means any agent of such a person, but *such term does not include the United States, a corporation wholly owned by the Government of the United States, or a State or political subdivision thereof.* Pub.L. No. 90–202, 81 Stat. 602 (1967) (current version at 29 U.S.C. § 630(b) (1974)). [Final emphasis added.]

This clear exclusion of the federal government from the definition of the term "employer" in the original Act, in light of the importance of that term to the prohibitions on age discrimination and in turn, the importance of those prohibitions to the 40 to 65 age limitations of section 631, suggests that if by 1974 it in fact was Congress' intent to impose age limitations on federal employees' rights under the ADEA, that the way to assure such a result would have been simply to include the federal government in the term "employer." Indeed, this is what Congress did with respect to state governments, so that the presently enacted version of 29 U.S.C. § 630(b) reads:

The term "employer" means a person engaged in an industry affecting commerce, who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year: *Provided*, That prior to June 30, 1968, employers having fewer than fifty employees shall not be considered employers. The *term also means* (1) any agency of such a person, and (2) *a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency* . . . . [Final emphasis added.]

But with respect to the federal government, Congress continued carefully to exclude it from section 630(b),

. . . *but such term does not include the United States or a corporation wholly owned by the Government of the United States.* [Emphasis added.]

and, thereby, from those interdependent parts of the ADEA of which section 631 and its age limitations, are an example. The exclusion, coupled with the emphatic statement of section 633a that "*[a]ll personnel actions* affecting employees or applicants for employment [in the federal government] . . . *shall be made free from any discrimination based on age*," [emphasis added] makes us hesitant to superimpose limitations such as the 40 to 65 age span, for such seriously narrows the congressional goal of providing older federal employees with freedom from age discrimination.

In an effort to show that Congress in fact did intend a more narrow goal, government counsel draws this court's attention to a sentence appearing in the identical House and Senate Reports on the 1974 ADEA amendments which states: "Protection under the Act is limited to individuals who are between the ages of 40 and 65." H.R.Rep. No.93–913, 93d Cong., 2d Sess. 40–41, *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 2811, 2849; S.Rep.No.93–690, 93d Cong., 2d Sess. 55 (1974). We have read the sentence in its full context and are not persuaded that it does evidence a congressional intent to narrow section 633a. For as already noted, section 633a, assuring protection against age discrimination to federal employees, was not the only amendment to the ADEA passed in 1974.[7] We think it a plausible reading of the sentence cited that it be seen as an expression of the scope of the Act generally, *i. e.*, the scope of the Act with respect to "employers" as that term is now defined in section 630(b). We still find nothing that allows us to read into the sentence an expression of congressional intent to work the illogical result of having federal employees guaranteed job security

7. *See* 88 Stat. 74–76. Moreover, these amendments were only a small part of the Fair Labor

Standards Amendments of 1974, Pub.L. 93–259, 88 Stat. 55.

between the ages of 65 and 70, but left defenseless against other age discrimination during those years.

If the legislative history regarding the ADEA does speak clearly on any point, it is this: that age discrimination in employment is a "tragic waste of human resources," 113 Cong.Rec. 34745 (1967) (Comments of Rep. Eilberg) that it is the result of "[u]nfavorable beliefs and generalizations about older persons [which] have grown up over the years and, in many instances, have hardened into restrictive policies and practices . . .," 113 Cong. Rec. 34746 (1967) (Comments of Rep. Daniels). Congress did not, either in 1967 or in 1974 provide the solution to the entire problem of age discrimination. In the field of non-federal employment, Congress limited its protection against "tragic waste" to those under 65. This choice was doubtless an accommodation of a number of reasons. But none is suggested for so limiting the protection in federal employment, where Congress has elsewhere expressed a policy protecting employment to age 70.

Indeed, neither in brief nor on oral argument has government counsel explained

what purpose would be served by construing section 633a to allow the federal government to deny its employees the right to complaint of job discrimination in their last five years of service. The government's position throughout has been that the overall statutory age limit of the ADEA is 65 and there should be the end of the matter.[8] The irony in all this is that before the government was brought under the ADEA, Congress had held it up as a model of nondiscrimination toward older employees for the private sector to emulate. *See* 113 Cong.Rec. 34742 (1967) (Comments of Rep. Burke).

We remain unpersuaded that the 40 to 65 age limitations of section 631 were intended by Congress to apply to federal employees age 65 to 70. Such a result would be in apparent conflict with 5 U.S.C. § 8335(a) and absent some affirmative statement by Congress that such was its intent, or recognition of some significant purpose to be served, we cannot construe section 633a of the ADEA to legitimize this conflict. Accordingly, we reverse the decision of the lower court as to Mr. Christie's ADEA claim.[9]

---

**8.** Though we have already discussed the language of the ADEA, we note again that a literal reading of the statute by no means supports the government in this conclusion. Section 631 is the only provision which limits "The prohibitions in this chapter" to the 40 to 65 age group. Section 623, which is entitled "Prohibition of age discrimination," and which uses the prohibitory form, "It shall be unlawful . . .," certainly comes closest to fulfilling the description of "The prohibitions in this chapter." But, as we have noted, in form, section 623 does not apply to the federal government, for the United States has been specifically excluded from the definition of employer. *See* our discussion, *supra*, of section 623 in light of section 630(b).

633a, the section which applies to employment in United States agencies, is entitled "Non discrimination on account of age in Federal Government employment". It neither speaks of prohibitions nor uses prohibitory language. Instead, it is mandatory in form, *i. e.*, "All personnel actions . . . shall be made free from any discrimination based on age."

At best for the government then, the applicability of the 40 to 65 age group limitation to federal employees would require reading into the statute, by construction, something which is not present on its face.

**9.** Since our reason in arriving at this decision is based in such large part on the illogic we see in the government's position on the ADEA when considered in light of 5 U.S.C. § 8335(a), the mandatory retirement law, we believe it necessary to note our awareness that though one part of 5 U.S.C. § 8335(a) states that mandatory retirement shall be at age 70, this is conditioned on the employee having had the opportunity to serve fifteen years. *See, supra*, note 1. In other words, if we assume a federal employee is first hired at age 65, then he cannot be forcibly retired until age 80. Because Mr. Christie will have served well over 15 years by the time he reaches age 70, we have not, in this case, had to deal with the issue of whether an octogenarian federal employee with less than 15 years of service could pursue an ADEA claim. Nor have we considered the appropriateness of an octogenarian federal job applicant claiming ADEA violations—for section 15 speaks of applicants as well as employees. We here decide only that federal employees between the ages of 65 and 70 are protected from age discrimination by the ADEA.

II. *The Constitutional and Other Statutory Claims*

Mr. Christie further challenges the district court's dismissal of his constitutional and other statutory claims on the grounds that he failed to exhaust administrative remedies. As we understand these claims—the one involving the Fifth Amendment Due Process Clause, the other relying on 5 U.S.C. § 8335(a), the mandatory retirement statute—Mr. Christie is not suggesting that their pursuit will safeguard any rights different from those he claims to have under the ADEA. Rather, he only argues that their pursuit is not hampered by any 40 to 65 age limitation. Our decision on Mr. Christie's ADEA claim having removed the age limitation barrier, we are aware of no need for Mr. Christie to pursue these other theories, and we render no opinion with respect to them.

The decision of the district court dismissing this case is reversed and the matter remanded for further proceedings.