**C. McChord CHRISTIE, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**Garth MARSTON, Acting Board Chairman, Federal Home Loan Bank Board, John J. Clarke, Jr., Richard J. Ceplecha, and Victor S. Meller, Defendants.**

No. 75 C 3048.

United States District Court, N. D. Illinois, E. D.

April 18, 1978.

Charles Barnhill, Jr., of Davis, Miner & Barnhill, Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., Matthew G. Ash and Harold B. Shore, Associate General Counsel, Federal Home Loan Bank Board, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff, a 69 year old employee of the Federal Home Loan Bank, is suing individual officers of the Bank under the Age Discrimination in Employment Act ("ADEA") and the Fifth Amendment for discriminatorily denying him promotional and educational opportunities based solely on his age. As relief, plaintiff seeks an injunction against all future discrimination and $75,-000.00 in damages. In the original action before this court, defendants' motion to dismiss the ADEA count was granted on the ground that the ADEA did not protect those over 65. The Seventh Circuit reversed, holding that by fixing 70 as the mandatory retirement age for federal employees in 5 U.S.C. § 8335(a), Congress demonstrated an intent to extend the protections of the ADEA to federal employees between the ages of 65 and 70. *Christie v. Marston*, 551 F.2d 1080 (7th Cir. 1977). The Seventh Circuit, however, did not consider the viability of plaintiff's constitutional claim. *Id.* at 1085. On remand, the defendants have moved to dismiss the Fifth Amendment claim, asserting four arguments.[1]

Defendants first argue that the Constitution does not create a cause of action against a federal officer for discrimination on the basis of age. We disagree. The

---

1. In their first brief, defendants claimed that sovereign immunity bars this suit. In their reply memorandum, however, defendants assert that any decision on the question of immunity would be premature. We conclude, therefore, that defendants have waived this ground as a basis for their motion to dismiss.

Due Process Clause of the Fifth Amendment imposes certain limitations on the conduct of federal officials. One guarantee contained within Fifth Amendment due process is that no person shall be denied the equal protection of the laws. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Although age is not a suspect classification qualifying for strict scrutiny, discrimination based on age denies such equal protection when there is no rational basis for that discrimination. *Gault v. Garrison*, 569 F.2d 993 (7th Cir. 1977). Taking the allegations of the complaint as true, we believe that plaintiff has suffered an irrational denial of promotional and educational opportunities based solely on age.[2] This states a sufficient cause of action under the equal protection component of the Fifth Amendment.

■■■ The primary question raised by defendants' first argument is whether damages may be implied as a remedy for clear violations of the Fifth Amendment equal protection component. Any answer to this question must begin with *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In that case, the Supreme Court held that the remedy of damages may be implied in an action against a federal officer who violates a plaintiff's Fourth Amendment rights. In deciding that compensatory relief was necessary and appropriate for the vindication of the privacy interest which had been invaded, the Court examined three factors: whether the claim is the sort which would be properly compensable in damages, whether state law provides adequate protection for the invaded interest, and whether federal law provides adequate alternative relief for the violation. *Id.* at 407–410, 91 S.Ct. 1999. (Justice Harlan, concurring). Applying those same factors to this alleged equal protection violation, we find that an equally strong case exists for implying a damages remedy. It is clear that the discriminatory denial of

promotions and education is the type of claim which is compensable in damages; in fact, the ADEA specifically provides that one remedy for such discrimination is an award of back pay. 29 U.S.C. § 633a(b) (Supp.1975). Equally clear is the forceful application of the second factor. As the Fifth Circuit has commented in a similar case, "[H]ere the case for implying a damages remedy is even stronger than in *Bivens*. In the *Bivens* situation state tort law is available to remedy some constitutional violations, and the exclusionary rule also sometimes provides a remedy." *Davis v. Passman*, 544 F.2d 865, 873 (5th Cir. 1977). For age discrimination in employment; however, state law does not create a cause of action, absent an express term in the contract of employment. Thus, we must conclude that "[t]he case for implying a constitutional damages remedy becomes more compelling when, as here, there is no meaningful alternative remedy," under state law. *Id.* In addition, the third factor favors the implication of a damages remedy. It is true that plaintiff class may be able to obtain alternative relief in the form of an injunction. We believe, however, that injunctive relief may be inadequate for plaintiff himself. Christie is presently 69 years old. By the time this litigation is concluded and relief is granted, Christie may well be 70 years old, the mandatory retirement age for federal employees. 5 U.S.C. § 8335 (1970). Because he could no longer work for the federal government, any injunction which might issue requiring promotions would not affect him. His only remedy, therefore, may be for the damages sustained by the loss of promotional and educational opportunities. Since each of the *Bivens* factors favors plaintiff's position under the particular facts of this case, we hold that there is an implied remedy for damages against federal officers who allegedly violated plaintiff's Fifth Amendment right to equal protection. *Davis v. Passman*, 544 F.2d 865 (5th Cir. 1977); *see also Owen v. City of Independence*, 560 F.2d 925 (8th Cir.

---

**2.** In their reply memorandum, defendants also assert that any decision on the question of a rational basis for defendants' alleged discrimination would be premature. We conclude, therefore, that defendants have waived this ground as a basis for their motion to dismiss.

1977); *Jacobson v. Tahoe Regional Planning Agency*, 558 F.2d 928 (9th Cir. 1977).

■ As their second argument, defendants assert that by enactment of the 1974 ADEA amendments extending coverage to federal employees, Congress intended to create an exclusive statutory remedy for age discrimination in federal employment. Thus, if defendants' argument prevails, plaintiff may not sue for violations of the Fifth Amendment which occurred after May 1, 1974, the effective date of the ADEA amendments. An analysis of this argument must begin with *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), in which the Supreme Court held that § 11 of the Equal Employment Opportunity Act of 1972 created an exclusive judicial remedy for claims of federal employment discrimination on the basis of race, sex, or national origin. The Court grounded this holding on its investigation of the legislative history and on its analysis of the Act's structure. In the legislative history, the Court observed a Congressional concern over the ineffectiveness of either the administrative or judicial process to remedy discriminatory practices in federal employment. *Id.* at 825, 96 S.Ct. 1961. Congress found that the localization of the hearing within the allegedly discriminating agency and the Civil Service Commission's ("CSC") poor record at obtaining just resolutions on appeal had discouraged federal employees from invoking the administrative machinery. *Id.* at 825–26, 96 S.Ct. 1961. If the possibility of administrative relief seemed remote, the possibility of judicial relief appeared non-existent. Congress perceived that the doctrines of sovereign immunity and exhaustion of administrative remedies had precluded judicial review or at a minimum had foreclosed certain forms of relief. *Id.* at 826–28, 96 S.Ct. 1961. This Congressional perception inspired the amendment's co-sponsor to announce that "it (the bill) would, '(f)or the first time, permit Federal employees to sue the Federal Government in discrimination cases . . . .' " *Id.* at 828, 96 S.Ct. at 1965 (citations omitted). From this announcement and Congress' general perception of the ineffectiveness of the remedies available for federal employment discrimination, the Court concluded it was proper to infer a Congressional intent to create an exclusive administrative and judicial scheme for redressing the problem. *Id.* at 829, 96 S.Ct. 1961.

The Court was not satisfied to rest its holding entirely on legislative history. As a second indication of the exclusiveness of the Title VII scheme, the Court relied on "[t]he balance, completeness, and structural integrity" of the Act which had achieved a "careful blend of administrative and judicial enforcement powers." *Id.* at 832–33, 96 S.Ct. at 1968. At the administrative level, Congress had delegated broad authority to the Civil Service Commission to review the equal employment opportunity plans of each federal agency and to enforce the statute through appropriate remedies and the promulgation of appropriate regulations. *Id.* at 831–32, 96 S.Ct. 1961. This administrative scheme was designed to complement judicial review. As a precondition to bringing an action in federal district court, Congress required a complainant to file either within 30 days of a final decision by the CSC or 180 days after the filing of the initial administrative charge. *Id.* at 832, 96 S.Ct. 1961. In evaluating the statutory scheme, the Court noted the crucial role assumed by the individual agency and the CSC and also the complementary nature of the administrative and judicial remedies. *Id.* at 832–33, 96 S.Ct. 1961. From this thorough and complementary scheme, the Court inferred a Congressional intent to create an exclusive remedy for discrimination in federal employment, for § 11 "with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible." *Id.* at 833, 96 S.Ct. at 1968.

An analysis of the amendments to the ADEA based on the *Brown* criteria leads to a similar conclusion: Congress intended the ADEA to be the exclusive remedy for age discrimination in federal employment. We

turn first to an examination of the legislative history. Prior to the extension of ADEA, the administrative remedies available to a federal employee who had been discriminated against on the basis of age were less effective than those available to a federal employee who had been discriminated against on the basis of race, sex, or national origin. The racial discriminatee could initiate an administrative hearing and take an appeal by procedures mandated in Civil Service regulations; the age discriminatee, on the other hand, was protected only by an informal personnel policy against age discrimination. *See* Federal Personnel Manual ch. 338. As the Congress well realized, the existence of this policy did not prevent widespread age discrimination in the federal government. 120 Cong.Rec. 4706 (1974). On the effectiveness and availability of judicial remedies, the legislative history is silent. It would be fair to conclude, however, that the obstacles to bringing a successful age discrimination suit against the federal government were equal to, if not more severe than, the obstacles to bringing a successful racial discrimination suit.[3] Whatever this silence might mean, Congress clearly recognized that the amendment would close "an important gap in coverage" which it believed had not been previously supplied by administrative and judicial remedies. 120 Cong.Rec. 4707 (1974). From this belief, it is reasonable to infer a Congressional intent to create an exclusive administrative and judicial scheme for redressing age discrimination in federal employment.

An analysis of the structure of the Act confirms this inference of Congressional intent. In virtually the same language as that used in the amendment to Title VII, Congress delegated to the Civil Service Commission broad authority to review the employment programs of each agency for evidence of age discrimination and to en-force the ADEA through provision of appropriate relief and the promulgation of appropriate regulations. *Compare* 42 U.S.C. § 2000e–16(b) *with* 29 U.S.C. § 633a(b). Although the provisions for judicial review in the ADEA differ somewhat from those in Title VII, the design of the ADEA surely contemplates a "careful blend of administrative and judicial enforcement powers." Like a Title VII claimant, an ADEA claimant may initiate a civil suit after a final agency decision, though he is apparently not subject to the strict 30 day statute of limitations applied to the Title VII claimant. *Compare* 42 U.S.C. § 2000e–16(c) *with* 29 U.S.C. § 633a(d). Or, like the Title VII claimant, the ADEA claimant has an alternative route for judicial review. Under Title VII, a person may file a court action if 180 days have elapsed since the filing of an administrative action without a final agency decision; under the ADEA, the complainant may resort to a civil suit 30 days after filing notice of an intent to sue with the Civil Service Commission. While the Title VII alternative seeks to afford the administrative procedure the first chance to resolve the dispute and the ADEA alternative merely affords the administrative procedure an opportunity at informal conciliation, it is significant that both alternatives blend judicial review into an administrative framework and both require prior notification of an administrative agency before resorting to court. From this thorough and complementary scheme, we think it natural to infer a Congressional intent to create an exclusive remedy for age discrimination in federal employment, because the ADEA amendment with its administrative exhaustion or CSC pre-notification alternatives "would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible."

Apart from the analysis adopted by the Supreme Court, we think there is a final

---

**3.** Due to the lack of administrative remedies for age discrimination, a complainant would probably not encounter the exhaustion defense in federal district court. On the merits, however, the age discriminatee would be far less likely to succeed than a racial discriminatee because, under the equal protection clause, a racial classification is highly suspect and subject to strict scrutiny whereas an age classification is not suspect and is tested by the rational basis standard.

compelling reason for holding the ADEA to be plaintiff's exclusive remedy for age discrimination in federal employment. In the introduction of the ADEA amendments and throughout its passage, the sponsors of the ADEA always believed that "the principles underlying these provisions in the EEOC bill are directly applicable to the Age Discrimination in Employment Act." 118 Cong.Rec. 15895 (1972). This clear legislative intent convinces us that the two statutes should be construed *in pari materia* as they apply to federal employees. 2A Sutherland, Statutes and Statutory Construction § 51.03, at 299 (4th ed. 1972).[4] Following this construction, we believe that the ADEA amendment was intended to provide an exclusive remedy for age discrimination.

▇▇▇▇ In an attempt to dispute every non-ADEA basis of jurisdiction, defendants make a third argument which asserts that the complaint fails to state the requisites for mandamus. "Mandamus may issue only when the claim for relief is clear and the duty of the officer involved is ministerial, plainly defined and preemptory." *McClendon v. Blount*, 452 F.2d 381, 383 (7th Cir. 1971). In this case, plaintiff seeks to compel defendants to reverse their previous promotion decisions and to promote him instead. "Surely, promotion or nonpromotion of employees within a department is a matter of supervisory discretion," rather than ministerial performance, *Gnotta v. United States*, 415 F.2d 1271, 1276 (8th Cir. 1969), and "an action in the nature of mandamus is an improper remedy to obtain a retraction of (a personnel) action already taken by the Department." *McClendon v. Blount*, 452 F.2d 381, 383 (7th Cir. 1971).

Therefore, we will strike plaintiff's reference to 28 U.S.C. § 1361 as a basis for jurisdiction.

▇▇▇▇ Finally, defendant Marston argues that 12 U.S.C. § 1464(d)(1) bars suits for money damages against members of the Federal Home Loan Bank Board. That section reads: "the Board shall be subject to suit (other than suits on claims for money damages) by any Federal savings and loan association or director or officer thereof with respect to any matter under this section or any other applicable law, rules or regulations thereunder." This statute clearly has no application to plaintiff's claim. First, the statute refers only to actions in which the Board is a party, whereas, in this case, plaintiff is suing Marston in his individual capacity and not as a Board member. Second and more importantly, the statute refers only to claims brought under the Federal Home Loan Bank Act whereas plaintiff is suing under the ADEA and the Fifth Amendment. Manifestly, § 1464(d)(1) does not bar a plaintiff from suing a Board member in his individual capacity for violations of an entirely different statute or the Constitution. *Chase Savings & Loan Association v. Federal Home Loan Bank Board*, 269 F.Supp. 965 (E.D.Pa. 1967). Therefore, defendant Marston's motion to dismiss on this ground is denied.

In summary, we have held that plaintiff has stated a cause of action for violations of the Fifth Amendment occurring before the effective date of the ADEA amendment, May 1, 1974, but that he has failed to state a cause of action for mandamus. After May 1, 1974, plaintiff's cause under the Fifth Amendment is excluded, and he may pursue his claim of age discrimination only

---

4. Plaintiff relies on *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) for the proposition that the ADEA is modeled on the Fair Labor Standards Act rather than Title VII. Plaintiff, however, does not explain how this proposition applies to the Supreme Court's exclusivity rationale. The FLSA is not particularly helpful in determining the effect of a statute upon prior constitutional claims, because unlike the ADEA or Title VII, the FLSA did not create a statutory right which arguably was already guaranteed by the Constitution. Thus,

as the Supreme Court recognized, Title VII may supply the model for construing the ADEA in in some matters. *Id.* at p. 1146. In interpreting the extension of the ADEA to cover federal employees, we believe Congress intended that the similar Title VII extension should provide the appropriate model. 118 Cong.Rec. 15895 (1972). Needless to say, it was this very same extension of Title VII which the Supreme Court held to create an exclusive remedy for discrimination based on race, sex or national origin.

under the exclusive remedy provided by the ADEA. All of defendants' remaining grounds for dismissal are denied.