**Phillip L. GOLYAR, Plaintiff,**

v.

**Lt. Charles McCAUSLAND, Director, Defense Logistics Agency; William Takasaki, Director of Logistics Data Management; Marian E. Green; David Fisher; Leo Brodsky; Dolores L. Rozzi, Director, Office of Review & Appeals of U.S. Equal Employment Opportunity Commission; U.S. Equal Employment Opportunity Commission, Defendants.**

No. K89–82 CA.

United States District Court, W.D. Michigan.

April 23, 1990.

---

Phillip L. Golyar, Battle Creek, Mich., pro se.

Leo Brodsky, Philadelphia, Pa., pro se.

Lairold M. Street, E.E.O.C., Washington, D.C., for E.E.O.C.

OPINION

ENSLEN, District Judge.

This case is currently before the Court on a motion to dismiss filed by defendants U.S. Equal Employment Opportunity Commission and Delores L. Rozzi, Director, Office of Review & Appeals of the Commission ("EEOC" or "defendant").[1] EEOC

---

1. The Court will discuss the EEOC and its director as a single defendant, for plaintiff sues Ms. Rozzi in her official capacity and, in addi-

also requests attorney fees and costs to be paid by plaintiff. The lawsuit here is an employment discrimination action filed in 1989 by *pro se* plaintiff Phillip Golyar, a former federal employee, against, *inter alia*, the EEOC and the Defense Logistics Agency, his former employer. The 1989 complaint alleges unlawful discrimination based on race, sex, age, and handicap pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.;* the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 633a, and the Rehabilitation Act.

## DISCUSSION

*Background*

Plaintiff originally brought a claim against the Defense Department agencies in 1984. This first complaint was eventually dismissed administratively as untimely. Plaintiff then sought review with the EEOC which affirmed the agency's decision. Subsequently, in 1986, plaintiff filed a *pro se* suit in this Court. *See Golyar v. Defense Logistics Agency,* No. K86–426 (W.D.Mich.). This multi-defendant lawsuit included the EEOC as a defendant, and alleged race and sex discrimination.[2] Plaintiff contended that the EEOC denied him the right to file discrimination and wrongful discharge appeals. Complaint, at 2 (Oct. 17, 1986).

In December 1986, EEOC filed a Motion to Dismiss in the K86–426 action before this Court. *See* Defendant's Brief in Support, Exhibit A (Oct. 2, 1989) (copy of 1986 motion).[3] In a March 30, 1987 Opinion and Order, this Court dismissed plaintiff's com-

plaint against EEOC. *See id.* Exhibit B. In that opinion I observed that "[i]t is clear from the materials in the file that plaintiff [Golyar]'s claim against the EEOC is that it improperly refused to extend the time within which he could file his complaint against the Defense Logistics Agency." Opinion, at 3 (March 30, 1987). I explicitly addressed the propriety of suing the EEOC in that matter, writing, "It is equally clear from the case law ... that 'Title VII *does not provide either an express or implied cause of action against the EEOC* to challenge its investigation and processing of a charge.'" *Id.* (quoting *McCottrell v. Equal Employment Opportunity Commission,* 726 F.2d 350, 351 (7th Cir.1984) (emphasis added)).[4] In addition, I noted that a plaintiff's remedy lies in an action against the head of the agency he believes has discriminated against him. *Id.* (citing *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1322 (7th Cir.1984)).

In the 1989 lawsuit, the crux of plaintiff's complaint is that his former employer discriminated against him due to his age, sex, race, and handicap. Plaintiff charged that the EEOC "refused to correct or [to] give me a positive resolution to several employment [d]iscrimination [c]harges that I have filed", adding that the director of the EEOC denied him "full [and] complete investigative rights to [his] complaints because they don't meet their [p]rima [f]acie criteria."[5]

*Motion to Dismiss Standard*

 A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Elliot Co., Inc. v. Caribbean Util.*

---

tion, the analysis applies equally to both defendants, unless otherwise specified.

2. In his complaint, plaintiff alleged discriminatory treatment by his former employer, the Defense Logistics Agency, and by the EEOC, which in September 1986 affirmed the Agency's decision, finding that plaintiff had failed to file his complaint "within thirty (30) days of the date of the matter causing [him] to believe he was discriminated against" as required by 29 C.F.R. § 1613.214(a)(1)(i).

3. In opposition to defendant's motion, plaintiff argued that the EEOC improperly denied him

the right to pursue his claims on the merits; that the EEOC did not review his claim because he is not a minority; and finally, that the EEOC did not fairly view his claim because he is not a woman. *See* Opinion, at 2 (March 30, 1987).

4. At one point on this subject, the Court stressed that there was "no basis for allowing plaintiff to pursue a claim against the EEOC." *Id.*

5. The Court assumes that plaintiff intended to suggest that he—as a white male in his forties with a handicap—does not meet what he believes is the EEOC's criteria.

*Co.*, 513 F.2d 1176 (6th Cir.1975). Technically, of course, the 12(b)(6) motion does not attack the merits of the case—it merely challenges the pleader's failure to state a claim properly. 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1364, at 340 (Supp.1987). In deciding a 12(b)(6) motion, the court must determine whether plaintiff's complaint sets forth sufficient allegations to establish a claim for relief. The court must accept all allegations in the complaint at "face value" and construe them in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983); *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1034–35 (6th Cir.1979); *Davis H. Elliot Co. v. Caribbean Utilities Co.*, 513 F.2d 1176 (6th Cir.1975).

The complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen*, 495 F.Supp. 822, 827 (E.D.Mich.1980). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Vermilion Foam Products Co. v. General Electric Co.*, 386 F.Supp. 255 (E.D.Mich. 1974). The court cannot dismiss plaintiff's complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

*Rule 12(b)(6), 12(b)(1): Title VII, ADEA, Rehabilitation Act Title VII*

To begin with, the EEOC is responsible for enforcing Title VII and the ADEA. EEOC regulations forward equal employment goals in federal government by delineating the process by which the EEOC and other agencies are to process complaints of federal employees charging discrimination against the employing agency, here the Defense Logistics Agency. Parts 1613.211 through .240 of the EEOC's regulations governing "Equal Employment Opportunity in the Federal Government," 29 C.F.R. § 1613.211–240 (1988), delineate how other agencies and the EEOC are to process federal employee complaints of alleged discrimination with their individual agencies. After an agency issues a final decision on a complaint, an employee who is dissatisfied with that decision may file an appeal to the EEOC's Office of Review and Appeal ("ORA"). *See* § 1613.231–.234. If an employee is dissatisfied with the ORA decision, he or she may request that the EEOC reopen and reconsider that decision, *see* § 1613.235, or may elect to file a civil action against the employing agency in a federal district court. *See* § 1613.281.

■ Plaintiff's allegations against the EEOC, in its capacity as an enforcement body, reflect his displeasure with its investigative action and its resolution of several discrimination charges he made against his former employer. I read his complaint broadly, due to his *pro se* status, and consider him to be arguing that the EEOC action was discriminatory and otherwise improper. As I previously held, however, the EEOC may not be sued for these reasons. Put another way, plaintiff has failed to state a claim upon which relief may be granted.

In his Title VII suit, plaintiff must be able to show a right of action against the EEOC. A plaintiff may do so by demonstrating that Congress granted such an action against a defendant "either expressly or by clear implication." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). The explicit right of actions created under Title VII for individuals who seek a remedy for discrimination are found in §§ 706 and 717. *See* 42 U.S.C. §§ 2000e–5, 2000e–16. Section 706 permits an individual to file charges of discrimination against the employer (or prospective employer) with the EEOC, and subsequently, to bring a suit against the employer in federal district court.

Federal employees may sue their employing agency under § 717, however, the only proper defendant in such a suit is the head

of the employing agency. *E.g., Newbold v. United States Postal Service,* 614 F.2d 46 (5th Cir.) (per curium), *cert. denied,* 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980). Because defendant was not employed by the EEOC, he has no explicit right here to sue the Commission under Title VII.

It is also true, as defendant argues, that plaintiff Golyar can show no implied remedy under Title VII. Whether a federal statute implicitly authorizes a cause of action may be determined by a finding that the overall statutory scheme is consistent with the inference that Congress intended to create a specific right of action. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–17, 100 S.Ct. 242, 245–46, 62 L.Ed.2d 146 (1979).

There can be no such finding here. Instead, the statutory scheme and legislative history of Title VII are inconsistent with the proposition that Congress intended such an action against the EEOC under these circumstances. Congress created a *de novo* cause of action against the employer allegedly discriminating where an individual is unsatisfied with the EEOC's resolution of his or her claim. *See, e.g., Occidental Life Insurance Co. v. Equal Employment Opportunity Comm'n,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). The Supreme Court in *Occidental Life* reviewed a relevant part of the legislative history which made it clear that:

> The retention of the private right of action ... is designed to make sure that the person aggrieved does not have to endure lengthy delays if the Commission ... does not act with due diligence and speed. Accordingly, the provisions [of the Act] allow the person aggrieved to elect to pursue his or her own remedy

under this title in the [federal] courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution.[6]

432 U.S. at 365–66, 97 S.Ct. at 2454 (quoting Senate Conference Report).

Title VII does not provide the EEOC with direct enforcement powers. Instead, enforcement of the Act is through *de novo* federal court action. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1973).[7] Thus the legislative history of Title VII provokes the conclusion that Congress did *not* intend the EEOC to be subject to a lawsuit by a charging party unhappy with the Commission's procedures, administrative determinations, or other actions.

In fact, courts considering this issue have consistently rejected the efforts of dissatisfied charging parties to sue the EEOC. *Ward v. Equal Employment Opportunity Commission,* 719 F.2d 311 (9th Cir.1983), *cert. denied,* 466 U.S. 953, 104 S.Ct. 2159, 80 L.Ed.2d 544 (1984); *McCottrell v. Equal Employment Opportunity Commission,* 726 F.2d 350 (7th Cir.1984), *Stewart v. Equal Employment Opportunity Commission,* 611 F.2d 679 (7th Cir. 1979); *Francis–Sobel v. University of Maine,* 597 F.2d 15 (1st Cir.), *cert. denied,* 444 U.S. 949, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979); *Georator Corp. v. Equal Employment Opportunity Commission,* 592 F.2d 765 (4th Cir.1979); *Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union,* 585 F.2d 210 (7th Cir. 1978); *Feldstein v. Equal Employment Opportunity Commission,* 547 F.Supp. 97 (D.Mass.1982); *Hall v. Equal Employment Opportunity Commission,* 456 F.Supp. 695 (N.D.Cal.1978).[8]

---

**6.** The legislative history further suggested that "recourse to the private lawsuit will [hopefully] be the exception and not the rule, and that the vast majority of complaints will be handled through the offices of the EEOC.... However, as the individual's rights to redress are paramount under the provisions of Title VII it is necessary that all avenues be left open for quick and effective relief." *Id.* 432 U.S. at 366, 97 S.Ct. at 2454.

**7.** Congress chose cooperation and voluntary compliance as the "preferred means" for achieving the goal of equality in employment. Thus final responsibility for enforcing Title VII is with the federal courts.

**8.** I also believe that this Court does not have jurisdiction over the subject matter and should be dismissed pursuant to Rule 12(b)(1). A federal district court is a court of limited jurisdiction, deriving jurisdiction solely from the congressional exercise of its authority to "ordain

### ADEA and Rehabilitation Act

The same is also true for a party attempting to sue the EEOC under the ADEA and the Rehabilitation Act. Section 15 of the Age Discrimination in Employment Act does not provide an explicit remedy against the EEOC for individuals in plaintiff's position who are neither employees nor applicants for employment with the EEOC. *See* 29 U.S.C. § 633a. Nor can such a remedy be inferred under the ADEA. The provisions of § 717 of the Civil Rights Act of 1964 and § 15 of the ADEA are virtually identical, and have been regularly construed in a similar fashion. *E.g., Lehman v. Nakshian,* 453 U.S. 156, 163–64, 101 S.Ct. 2698, 2702–03, 69 L.Ed.2d 548 (1981). *See also Nabors v. United States,* 568 F.2d 657, 659 (9th Cir. 1978).[9] This is not surprising in that Title VII and the ADEA share a common mission: the elimination of discrimination in the workplace. *See Oscar Mayer v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979).

As the Fifth Circuit has observed:

Because Title VII shares with ADEA a common purpose, *i.e.,* elimination of discrimination in the workplace [, and] because the statutory schemes are similar ... the Supreme Court [has] considered cases arising under one statute to have value as precedent for cases arising under the other.

*Coke v. General Adjustment Bureau Inc.,* 640 F.2d 584, 587 (5th Cir.1981) (*en banc*).

*Accord Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir.1975). In addition, while discussing the scope of the civil action authorized by § 15 of the ADEA, the Seventh Circuit indicated that the similarities between the ADEA and Title VII with regard to federal employees "completely outweigh the differences, and compel the construction that the civil action provided by both Acts be of the same character." *Nabors,* 568 F.2d at 659.

Courts have repeatedly held that § 15 of the ADEA is the exclusive remedy for age discrimination in the federal sector. *Paterson v. Weinberger,* 644 F.2d 521 (5th Cir. 1981); *Christie v. Marston,* 451 F.Supp. 1142 (N.D.Ill. (1978)). Courts have also held that the proper defendant in a § 15 action is the head of the employing agency. *Ellis v. United States Postal Service,* 784 F.2d 835 (7th Cir.1986); *Bechtel v. United States Office of Personnel Management,* 549 F.Supp. 111, 113 (N.D.Ga.1982); *Carter v. Marshall,* 457 F.Supp. 38, 41 (D.D.C. 1978). The *Paterson* court explained that "by establishing the ADEA's comprehensive scheme for the resolution of employee complaints of employment discrimination in federal employment, Congress clearly intended that *all* such claims of age discrimination be limited to the rights and procedures authorized by this Act." 644 F.2d at 525 (emphasis added).[10]

Under the Rehabilitation Act, plaintiff's claim is likewise not properly brought against the EEOC. Although plaintiff is

and establish" inferior courts under the Constitution. *Lockerty v. Phillips,* 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943).

Section 706(f)(3), 42 U.S.C. § 2000e–5(f)(3), authorizes federal courts to hear enforcement actions brought against alleged discriminating employers by private parties, the Attorney General or the Commission. Section 707(b), 42 U.S.C. § 2000e–6(b), grants the court jurisdiction over actions brought by the Commission against persons engaged in a pattern or practice of resistance to the goals of Title VII. Section 717, 42 U.S.C. § 2000e–16, prohibits discrimination against federal employees on the basis of race, color, religion, sex or national origin and incorporates the rights and remedies contained in § 706(f)-(k), *i.e.,* it provides federal employees who allege employment discrimination with a right to proceed in a *de novo* court action against their federal employers. None of these sections is the proper basis for a claim by the former employee of a federal agency against the EEOC as an enforcement agency.

9. The court in *Nabors* acknowledged that courts frequently refer to interpretations of Title VII for assistance in defining analogous sections of the ADEA "because the Acts are so similar." *Id.* at 659 n. 3 (citing, *e.g., Dartt v. Shell Oil Co.,* 539 F.2d 1256, 1259 (10th Cir.1976); *Curry v. Continental Airlines,* 513 F.2d 691, 693 (9th Cir. 1975)).

10. As I have previously discussed with regard to Title VII, *see supra* note 8, this Court does not have subject matter jurisdiction where a former employee of a federal agency brings a lawsuit alleging discrimination against the EEOC as enforcement agency.

not specific in his pleading, the Court assumes his claim is made pursuant to 29 U.S.C. §§ 791–794a. Section 794a provides that the provisions of § 717 of Title VII of the Civil Rights Act of 1964 shall apply to such a claim. This section provides in relevant part that:

**§ 794a. Remedies and attorney fees**

(a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights act of 1964 (42 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k)), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

29 U.S.C. § 794a(a)(1). I have held that § 717 of Title VII provides no remedy for plaintiff here; the same is true then with regard to his claim for discrimination due to a handicap under § 794a.

*Sovereign Immunity*

 Defendant EEOC also argues that plaintiff's lawsuit is barred by the doctrine of sovereign immunity. Indeed, the EEOC as an agency of the United States cannot be sued for monetary relief unless sovereign immunity has been waived. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). The doctrine applies to suits in which a federal agency is the named defendant. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). A waiver of sovereign immunity cannot be implied; it must be unequivocally expressed. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. at 1351; *United*

*States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Thus, I also find that plaintiff's claim for monetary damages against the EEOC are properly dismissed.

In sum, I find ample support for defendant EEOC's motion to dismiss pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure. In addition, plaintiff's claim, to the extent it claims monetary damages in the amount of $4,000,000, is barred by the doctrine of sovereign immunity. Plaintiff's complaint against the EEOC and Delores Rozzi is therefore appropriately dismissed. I will enter such an order.

*Sanctions under Rule 11*

Sanctions are governed by Rule 11 of the Federal Rules of Civil Procedure which provides in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

 The 1983 amendment to Rule 11 mandates the imposition of sanctions where the attorney's conduct violates the rule. *INVST Financial Group v. Chem-Nucle-*

*ar Systems,* 815 F.2d 391, 401 (6th Cir. 1987). The conduct of counsel will be measured by a standard of objective reasonableness. *Albright v. Upjohn,* 788 F.2d 1217, 1221 (6th Cir.1986). This standard is considerably more stringent than the old "good faith" formula. *Id. See also Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985) ("simply put, subjective good faith no longer provides the safe harbor it once did.").

Rule 11 imposes three duties on an attorney signing pleadings:

First, the attorney must conduct a reasonable inquiry to determine that the document is well grounded in fact. Second, the attorney must conduct a reasonable inquiry to determine that the positions taken are warranted by existing law or as good faith arguments for extension or modification of existing law. Third, the document must not be filed for any improper purpose.

*Jackson v. Law Firm of O'Hara,* 875 F.2d 1224, 1229 (6th Cir.1989).[11]

Thus, Rule 11 expressly imposes on counsel an affirmative duty to investigate the facts and law that support a pleading. As one court has stated, "[t]he day is past when our notice pleading practice ... [and] liberal discovery rules invite the federal practitioner to file suit first and find out later whether he had a case or not." *Hale v. Harney,* 786 F.2d 688, 692 (5th Cir.1986); *see also Stewart v. RCA Corp.,* 790 F.2d 624, 633 (7th Cir.1986) (Rule 11 "requires lawyers to think first and file later, on pain of personal liability."); *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3d Cir. 1986) (Rule 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look and listen.' "). Rule 11 serves to deter the filing of meritless cases and to compensate those defending against them. *See In re Yagman,* 796 F.2d 1165, 1180 (D.C.Cir.1986), *In re TCI Ltd.,* 769 F.2d 441, 445–50 (7th Cir.1985).

■ Where a district court finds that an attorney has violated Rule 11, it is obligated to impose some sanction. *Jackson,* 875 F.2d at 1229; *INVST Financial Group,* 815 F.2d at 401; *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985). A district court has wide discretion in selecting the appropriate sanction. *Jackson,* 875 F.2d at 1229; *INVST Financial Group,* 815 F.2d at 401. These potential sanctions include "a reasonable attorney's fee." *Id.* Sanctions are imposed to forward the goals of Rule 11: deterrence and compensation. Of these, deterrence is the principal goal. *Jackson,* 875 F.2d at 1229; *Doering v. Union County Board,* 857 F.2d 191, 194 (3d Cir.1988).

■ I tend to agree with defendant EEOC that the action before me is virtually indistinguishable from the 1986 lawsuit as it pertains to the EEOC. I have carefully examined the complaints in K89–82 and K86–426. In the "Acts complained of" section of the identical form complaints, with regard to defendant EEOC, plaintiff wrote: "denial of right's [sic] to file discrimination and wrongful discharge's appeals [sic] with ... (EEOC), Washington, D.C." Complaint, at 2 (Oct. 17, 1986). In the subsequent case, plaintiff alleged that after he conversed with the EEOC, it "refused to correct or give me a positive resolution to several employment discrimination charges I have filed." Plaintiff then adds the following: "The EEOC .... directors have denied me full [and] complete investigative rights to my complaints because [I] don't meet their prima facie criteria." *Id.* at 2–3.

In both complaints, plaintiff alleges race and sex discrimination; in the later case, he adds age and handicap discrimination charges as well.

I find that the lawsuits against the EEOC were substantially similar. In addition, I made it perfectly clear in my opinion of March 30, 1987 in K86–426 that Title VII does not provide a cause of action against the EEOC. Thus by bringing a second lawsuit against the EEOC, plaintiff in part

---

**11.** The genesis of the rationale supporting the rule is generally attributed to Justice Joseph Story, who believed that counsel's signature served to guarantee that "there is good ground for suit in the manner in which it is framed." J. Story, *Equity Pleadings,* § 47 (1838).

ignored the mandate communicated to him as a *pro se* plaintiff. I do not find it reasonable in law or fact for a *pro se* plaintiff to bring a second lawsuit alleging race and sex discrimination under Title VII against the EEOC for a time period virtually identical to that in the first lawsuit and for charges essentially the same as in the first lawsuit, that is, charges alleging improper and discriminatory investigative and adjudicative process. To the extent that plaintiff has attempted to "re-litigate" his first lawsuit in these areas of his second lawsuit, I believe sanctions are in order in spite of plaintiff's *pro se* status.

Plaintiff is not shielded from a finding that he violated Rule 11 by virtue of his having brought this action *pro se.* The rule itself is addressed to the signature of "an attorney or party." The Advisory Committee notes confirm that the rule applies to anyone who signs a pleading, and that its reasonable inquiry requirement is the same for unrepresented parties as for attorneys. Notes to Rule 11, at 34. The notes also make it clear that Rule 11 is designed to discourage an attorney's or party's dilatory or abusive tactics and to streamline the litigation process by lessening frivolous claims (or defenses). *Id.*

The Advisory Committee observed that a court has discretion to consider the special circumstances that arise in *pro se* situations. *Id.* Defendant EEOC recognizes the obstacles faced by *pro se* plaintiffs, and represents to this Court that it does not usually request that costs and fees be assessed against *pro se* plaintiffs who improperly sue the EEOC. This *pro se* action, however, is legally indistinguishable from the 1986 lawsuit. In seeking Rule 11 sanctions the EEOC wishes both to be compensated for the cost of defending itself in this action and to discourage future actions of this nature.

Federal district courts have held *pro se* litigants to be in violation of Rule 11 for bringing actions that were not warranted by the law or by the facts, and have required those litigants to pay the defendants' costs and attorney's fees, and even to pay fines to the court or to the defen-

dants. *See, e.g., Dominguez v. Figel,* 626 F.Supp. 368 (N.D.Ind.1986) (costs, fees, and $1,500 fine); *Auen v. Sweeney,* 109 F.R.D. 678 (N.D.N.Y.1986) (costs awarded to government agency); *Nixon v. Phillipoff,* 615 F.Supp. 890 (N.D.Ind.1985), *aff'd,* 787 F.2d 596 (7th Cir.1986) (attorney's fees and $750 fine); *Snyder v. I.R.S.,* 596 F.Supp. 240 (N.D.Ind.1984) (costs and attorney's fees, and $500 fine).

Thus, as to defendant EEOC, I find that the lawsuit before me was not well-grounded in law or fact, and that it was unreasonable for plaintiff, even taking into account his *pro se* status, to again file charges of race and sex discrimination for the same approximate time period against this defendant. Giving plaintiff every benefit of the doubt, I find that a sanction is mandated under Rule 11. Of course, I need only sanction plaintiff to the extent necessary to urge future compliance with Rule 11. Filing a lawsuit is a serious matter, and it should not be done lightly, frivolously, or without due regard to the very real consequences that ensue, including a defendant's need to expend dollars in attorney's fees to defend the action. I hereby sanction plaintiff under Rule 11 and order him to pay $500 toward defendant EEOC's attorney's fees.