**DAVIS H. ELLIOT CO. INC.,**
**Plaintiff-Appellant,**

v.

**CARIBBEAN UTILITIES CO., LTD., et al., Defendants-Appellees.**

No. 74–1389.

United States Court of Appeals, Sixth Circuit.

March 31, 1975.

Wilbur L. Hazlegrove, Hazlegrove, Dickinson, Smith & Rea, Roanoke, Va., Angus W. McDonald, Lexington, Ky., for plaintiff-appellant.

Lindsey W. Ingram, Jr., Stoll, Keenon & Park, Lexington, Ky., for defendants-appellees.

Before WEICK and ENGEL, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

This is an appeal from a final order of the United States District Court for the Eastern District of Kentucky, dismissing this diversity action. The order was en-

tered after a hearing but without a written opinion.

We reverse and remand.

## I. BACKGROUND

The significant facts, all of which are agreed upon by the parties, may be stated briefly. Plaintiff Davis H. Elliot Company, Inc. (Elliot) is organized and incorporated under the laws of Virginia, and conducts an electrical construction and contracting business. Defendant Caribbean Utilities Company Ltd. (Caribbean) is an alien corporation, organized under the laws of the British West Indies, and is engaged exclusively in the manufacture, sale, and distribution of electric power on Grand Cayman Island, which lies to the south of Cuba in the Caribbean Sea. The individual defendants are three Kentucky citizens and residents who are stockholders in Caribbean and officers in the corporation with titles as indicated: (a) Robert Odear, Managing Director and General Counsel; (b) James S. Shropshire, Vice Managing Director; and (c) Evangelos S. Levas, Secretary-Treasurer. Each of the three individual defendants is principally engaged in an occupation unrelated to his position with Caribbean, and, specifically, Odear is an attorney, with offices in Lexington, Kentucky.

In September, 1970, the two corporate parties entered into a contract, under the terms of which Elliot was to build approximately 25 miles of electrical distribution line for Caribbean on Grand Cayman Island. The contract proposal was sent by Elliot to Odear as Managing Director of Caribbean, at Odear's law office address in Lexington; and the proposal was returned to Elliot by mail, approved and signed by Shropshire. Later, in June, 1971, a dispute about the adequacy of Elliot's performance arose, and, in an effort to resolve the disagreement, a meeting was held in Lexington at Odear's law office, with officers of both companies (including all of the individual defendants) in attendance.

At the meeting, an agreement was, in fact, reached (although its exact terms are in dispute), and on June 29, 1971, Odear wrote to one Duval Adams, an officer of Elliot, confirming, on the basis of "our conversation," that the construction contract would be "terminated" as of July 2, 1971. This confirming letter was written on Caribbean Utilities letterhead stationery, which displayed, as Caribbean's address, the address of Odear's Lexington law office.

Elliot's complaint was filed on May 21, 1973, and amended on September 26, 1973. Count I charges Caribbean with failure to honor its obligation to reimburse plaintiff Elliot for $25,764.56 in expenses incurred pursuant to the termination agreement, and also alleges wrongful appropriation of a certain motor vehicle (valued at $1,200) for the use of either Caribbean or Levas. Count II of the complaint alleges that the three named individual defendants (Odear, Shropshire and Levas) are liable to Elliot for wrongfully inducing Caribbean to breach the termination agreement.

Personal service of original process was made on all defendants. (Odear was served both individually and as an officer of Caribbean.) No challenge has been made to the manner of service of process.

In dismissing this action, the District Judge, upon motion: (1) quashed service of summons on Caribbean as to both claims in Count I on the ground that Caribbean does not transact sufficient business in the Commonwealth of Kentucky to make it amenable to service there; (2) dismissed Count II (wrongful inducement to breach by the individual defendants) for failure to state a claim upon which relief can be granted; and (3) dismissed the portion of Count I which charged Levas with wrongful appropriation of the motor vehicle, apparently for insufficiency of amount in controversy.

The two principal issues presented for our consideration are: first, whether the District Court has *in personam* jurisdiction over defendant Caribbean Utilities Company, Ltd.; and second, whether Count II of plaintiff's complaint (which

charges officers of Caribbean with wrongfully inducing that corporation to breach its agreement with Elliot) states a claim. The question of the dismissal of the $1,200 claim against defendant Levas is a subsidiary matter which depends upon the result reached with respect to the second principal issue.

## II. PERSONAL JURISDICTION OVER CARIBBEAN UTILITIES

 This action came before the District Court under the provisions of 28 U.S.C. § 1332, and it is now well settled that, subject to the requirements of the due process clause of the Fourteenth Amendment, federal courts in diversity cases must look to the law of the appropriate state to determine the extent of their personal jurisdiction. *See e. g.,* In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 224 (6th Cir. 1972); Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292, 294 (6th Cir. 1964); Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447, 448 (6th Cir. 1963). The applicable state law here is the Kentucky long-arm statute, which reads, in pertinent part, as follows:

"(1) As used in this section, 'person' includes . . . a corporation . . . [which] is a nonresident of this commonwealth.

(2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

1. *Transacting any business in this commonwealth;* . . ." (emphasis added). KRS 454.210(1) and (2)(a) 1.

The basic inquiry as to the validity of asserted *in personam* jurisdiction is a two-fold one which requires (1) a determination of whether the state legislature has authorized the courts of the state to exercise jurisdiction over the nonresident in question, and (2) a determination of whether the jurisdiction so authorized is consistent with Fourteenth Amendment due process as that concept is delineated in the "minimum contacts" formula of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945);[1] McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); and Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). However, these two lines of inquiry merge if the "legislature has authorized [the state] courts to reach to the full constitutional limits in pursuit of a non-resident defendant," Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374, 376 (6th Cir. 1968).

 KRS 454.210 is of recent vintage, and the term "transacting any business" has not been authoritatively construed by the Kentucky courts; but Caribbean argues vigorously that such a merged inquiry is inappropriate here (1) because the "transacting any business" standard is simply a "codification" of judicial interpretations of the analogous portion of Kentucky's former long-arm statute, KRS 271.610(2),[2] and (2) because the term "doing of business" in the former statute was not coextensive with the boundaries of the due process clause. We disagree for the reason that, while results varied with the facts under consideration, both the state and federal ju-

---

1. In *International Shoe,* the Supreme Court held that:

 "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." 326 U.S. at 316, 66 S.Ct. at 158.

2. The now superceded KRS 271.610(2) read, in pertinent part, as follows:

 "Any foreign corporation that *does business* in this state without having [designated an agent upon whom process can be served] shall by such *doing of business* be deemed to have made the secretary of state its agent for the service of process in any civil action instituted in the courts of this state against such corporation involving a cause of action arising out of or connected with the *doing of business* by such corporation in this state . . . ." (emphasis supplied).

diciary often looked to International Shoe Co. v. Washington, *supra*, 326 U.S. 310, 66 S.Ct. 154 (1945) and its progeny as the touchstones for determining the scope of the personal jurisdiction of the Kentucky courts in "doing of business" cases. *See e. g.*, Field Enterprises Educational Corp. v. Hopkins, 378 S.W.2d 797 (Ky.1964); Charles Zubik & Sons v. Marine Sales & Service, 300 S.W.2d 35 (Ky.1957); McKenna v. Udall, 135 U.S. App.D.C. 335, 418 F.2d 1171 (1969); Irby v. All State Industries of North Carolina, 305 F.Supp. 772 (W.D.Ky.1969).

Moreover, even if Caribbean is correct in its contention that the former long-arm statute was limited to some degree in its due process implications, we believe, as this Court indicated previously by way of obiter dictum, that any such limitation was removed by the enactment of the statute which we consider here. Etheridge v. Grove Manufacturing Co., 415 F.2d 1338, 1340–41 (6th Cir. 1969).

This conclusion is in accord with interpretations of the same statutory language earlier enacted in other jurisdictions. For example, in construing Ohio's "transacting any business" long-arm provision, this Court, per Judge Celebrezze, stated in In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220, 225 (6th Cir. 1972):

"Most significant of [the reasons for holding that the Ohio 'transacting any business' statute extends personal jurisdiction to the full constitutional limits] is the identity between this subsection and a provision of the Illinois Civil Practice Act [Ill.Stat.Ann. c. 110, § 17(1)(a)] which has been held to extend jurisdiction to the limits of due process. The opinion in which this interpretation of the Illinois provision was set forth, Nelson v. Miller [11 Ill.2d 378, 143 N.E.2d 673 (1957)] was widely heralded as a decision of major import. Decided a number of years before the Ohio long-arm statute was enacted, the significance of the construction could not have escaped the Ohio legislators during their delibera-

tions. It is the settled rule in Ohio that when comparable legislation has been construed in other jurisdictions prior to the enactment of the Ohio statute, the interpretation put on the law elsewhere is to be given great weight in construing the Ohio Statute. Schneider v. Laffoon, 4 Ohio St.2d 89, 212 N.E.2d 801 (1965). Applying this rule we find ample reason to believe that in adopting a provision construed to extend jurisdiction to the Constitutional limits the Ohio legislature intended to achieve an indentical result.

Our belief in the accuracy of this evaluation of legislative intent is reinforced by the fact that other courts which have passed on the question have come to the same conclusion. Seilon, Inc. v. Brema S.p.A., 271 F.Supp. 516, 518–519 (N.D.Ohio 1967); Didactics Corp. v. Welch Scientific Co., 291 F.Supp. 890 (N.D.Ohio, 1968)."

The rule adhered to in Kentucky is as follows:

"While the courts of one state, which has adopted in terms a statute previously passed by another state, will not be bound by the interpretation of the courts of such other state, the interpretation of the courts of that state before the enactment by the sister state are treated as very persuasive and will ordinarily be followed." Conner v. Parsley, 192 Ky. 827, 837, 234 S.W. 972, 976 (1921).

Since we find no reported decisions in which KRS 454.210(2)(a) 1 has been construed by the Kentucky courts, we have the obligation to use our best judgment, drawing upon all available sources, to adopt the interpretation of that statute which we believe that the Kentucky Court of Appeals would choose, were the issue presented to that body. Filley v. Kickoff Publishing Co., 454 F.2d 1288, 1291 (6th Cir. 1972); Andrew v. Bendix Corporation, 452 F.2d 961, 962 (6th Cir. 1971), cert. denied, 406 U.S. 920, 92 S.Ct. 1773, 32 L.Ed.2d 119 (1972); Royal Indemnity Co. v. Clingan, 364 F.2d 154, 157 (6th Cir. 1966). Keeping this standard in mind, we hold, in light of the factors

discussed above, that the limits of personal jurisdiction conferred by KRS 454.-210(2)(a) 1 are coextensive with the boundaries of the due process clause.

Based on the minimum contacts concept of International Shoe Co. v. Washington, *supra*, 326 U.S. at 316, 66 S.Ct. 154, as applied in McGee v. International Life Insurance Co., *supra*, 355 U.S. 220, 78 S.Ct. 199, and Hanson v. Denckla, *supra*, 357 U.S. 235, 78 S.Ct. 1228, three criteria for determining the constitutional outer limits of personal jurisdiction have evolved.[3]

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Southern Machine Co. v. Mohasco Industries, Inc., *supra*, 401 F.2d at 381.

■ Caribbean argues first that it has not engaged in purposeful activity in Kentucky; but it is undisputed that the original construction contract was mailed to the Managing Director of Caribbean (Odear) at his office, in Lexington, and, by way of an affidavit, which is part of the record on appeal, Odear himself has stated affirmatively

"That by virtue of his position as Managing Director and General Counsel for Caribbean Utilities Company, Ltd. this affiant ordered stationery giving an address of 310 First National Bank Building, Lexington, Kentucky 40507 for Caribbean Utilities Company, Ltd. The purpose in using such stationery was to prevent the time delay in various communications between this affiant as Managing Director and General Counsel between Grand Cayman Islands [sic] and his office for the practice of law in Lexington, Kentucky."

Moreover, the termination agreement which is the subject of this action was actually negotiated and concluded in Odear's Lexington office, at a meeting attended by officers of both corporations; and the letter memorializing that agreement was prepared in and sent from that office.

In a highly formalistic presentation, reciting at length the technical attributes of its corporate structure, Caribbean urges that because it is incorporated in the British West Indies, because its account books are maintained on Grand Cayman Island, and because its annual meetings are held there, it cannot be said to have purposefully acted in Kentucky. This is, of course, a proposition which denies the realities of Caribbean's mode of conducting its affairs.

■ Caribbean also asserts that the transactions related to the termination agreement had no realistic impact on the commerce of the Commonwealth, *Southern Machine, supra*, 401 F.2d at 382, and that no consequence in Kentucky was reasonably foreseeable when the agreement was made. We believe that this characterization of the events surrounding the agreement is an artificially narrow one which tacitly equates the idea of commercial impact on the forum with the narrower concept of financial gain or loss in the forum. Failure to honor a contractual obligation incurred in a state cannot reasonably be said to be without consequence there. The effects of such a breach of contract on the general con-

---

**3.** We observe, as we have in the past, that this three-pronged approach has been criticized in some quarters as unnecessarily narrow in scope. *See* In-Flight Devices Corporation v. Van Dusen Air, Inc., *supra*, 466 F.2d at 226, n. 11; King v. Hailey Chevrolet Company, 462 F.2d 63, 67 (6th Cir. 1972) n. 1. In light of our conclusions here, we need not reach the issues raised by such criticism; but we believe that the tripartite mode of analysis is not in derogation of the principles of *International Shoe, supra*, 326 U.S. 310, 66 S.Ct. 154, but is, rather, an application "in a specific fashion [of] the broad rule requiring substantial minimum contacts as a basis for jurisdiction." *In-Flight Devices Corporation, supra*, 466 F.2d at 226.

duct of business may not be readily quantifiable, but they are, nonetheless, real. The purposeful action test of *Southern Machine, supra,* 401 F.2d at 381, is not intended to require, as Caribbean strongly implies, that to be subject to the personal jurisdiction of the courts of a state, a nonresident corporation must actively conduct an income-generating enterprise in that state. To the contrary, it is designed only

". . . to insure that the defendant has become involved with the forum state through actions freely and intentionally done. It seeks to avoid the assertion of jurisdiction in a situation where all contacts result entirely from a decision made by plaintiff as was the case in Hanson v. Denckla. [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)]" *In-Flight Devices Corp., supra,* 466 F.2d at 228.

The agreed-upon facts make it evident that some significant portion of Caribbean's affairs, including routine transactions, contract negotiations, and corporate decision-making, were carried on in Kentucky. The fact that such activities were intended ultimately to affect or benefit the operation of a power generating system in the British West Indies, does not in logic or law mean that they had no impact on the commerce of the Commonwealth of Kentucky.

Similarly, Caribbean's remaining contentions (which are, essentially, variations of the above-described arguments) are without merit. We are convinced that Elliot's cause of action, based, as it is, upon an agreement voluntarily negotiated and concluded in Kentucky by Caribbean's officers and agents, arose from that corporation's activities in that state; and Caribbean has failed to demonstrate that maintenance of this suit against it would in any way be unreasonable or "offend traditional notions of fair play and substantial justice." *International Shoe, supra,* 326 U.S. at 116, 66 S.Ct. at 158.

Accordingly we hold that Caribbean had the requisite minimum contacts with the Commonwealth of Kentucky to sub-

ject it to the personal jurisdiction of the District Court.

### III. ELLIOT'S CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

In Count II of Elliot's complaint, it is alleged that the three individual defendants "acting together and in concert . . . wrongfully induced or caused Caribbean to breach the agreement for cancellation of the Construction Contract by nonpayment." The District Court disposed of this allegation on a motion to dismiss for failure to state a claim upon which relief can be granted; and, as a result, the scope of our review is well defined.

The object of a motion under Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the pleading. Thus, well pleaded facts are taken as true, and the complaint is construed liberally in favor of the party opposing the motion. L'Orange v. Medical Protective Co., 394 F.2d 57, 59 (6th Cir. 1968). Furthermore, such a motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In Kentucky, intentional interference with a known contractual relationship gives rise to an action in tort, if the interference is malicious or without justification. Derby Road Building Co. v. Commonwealth, 317 S.W.2d 891, 895 (Ky.1958). Moreover, a corporate officer or agent is personally liable for a tort committed by him although he was acting for the benefit of the corporation. Small v. Bailey, 356 S.W.2d 756 (Ky. 1962). Therefore, this Court cannot conclude that appellant's complaint is insufficient or that it shows on its face an "insuperable bar to relief" as to the tortious interference claim against the individual defendants. Corsican Productions v. Pitchess, 338 F.2d 441, 442–43 (9th Cir. 1964).

The last item to be considered on this appeal is Elliot's $1,200 claim against defendant Levas (for wrongful appropriation of a motor vehicle), which was apparently dismissed for insufficiency of amount in controversy. In light of our conclusions with respect to Elliot's other claim against Levas, we need only note here that under 28 U.S.C. § 1332(a) a plaintiff can aggregate his causes of action against a defendant and it is not required that each claim against a defendant exceed $10,000. Lemmon v. Cedar Point, Inc., 406 F.2d 94, 96 (6th Cir. 1969).

Reversed and remanded.