**J. Ross HAFFEY**

v.

**Bob TAFT, Secretary of State of Ohio.**

**No. C–2–92–851.**

United States District Court,
S.D. Ohio, E.D.

Oct. 8, 1992.

Edward G. Bohnert, Bernard, Haffey & Bohnert Co., L.P.A., Lyndhurst, Ohio, for plaintiff.

Patrick A. Devine, Cherry Lynne Poteet, Asst. Attys. Gen., Chief Counsel's Staff, Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, Senior District Judge.

This matter comes before the Court to consider the motion of the Plaintiff for a preliminary injunction, Fed.R.Civ.P. 65(a), and the motion of the Defendant to dismiss, Fed.R.Civ.P. 12(b)(6).

## FACTUAL BACKGROUND

Plaintiff Haffey is one of three candidates for election to the Office of Chief Justice of the Ohio Supreme Court. Unlike the other two candidates, Plaintiff is not affiliated with any organized political party.[1]

On August 31, 1992 Plaintiff requested[2] that Defendant Taft indicate the political party affiliation or nonaffiliation on the ballot for all candidates to the office of Chief Justice in the November 3, 1992 general election. On September 2, 1992, Defendant denied Plaintiff's request, stating that such designation is prohibited by Ohio Revised Code § 3505.04. This section provides for the printing of nonpartisan ballots for Ohio's judicial elections, and states that:

On the nonpartisan ballot shall be printed the names of all nonpartisan candidates for election to judicial office ...

\* \* \* \* \* \*

No name or designation of any political party nor any words, designations, or emblems descriptive of a candidate or his political affiliation, or indicative of the method by which such candidate was nominated or certified, shall be printed under or after any nonpartisan candidate's name which is printed on the ballot.

On September 21, 1992, Plaintiff filed this action claiming that Ohio Rev.Code

§ 3505.04 violates his right to free association, free speech, and equal protection pursuant to the First and Fourteenth Amendments to the United States Constitution. Essentially, Plaintiff claims that the existence of the primary election gives to the party-affiliated candidates an unfair advantage:

13. The Democratic and Republican candidates were given the opportunity in the Ohio primary election to declare their party affiliation to the Ohio electorate, however, as an independent candidate, Plaintiff has been denied the opportunity to express his party affiliation.

14. Since two of the candidates for Chief Justice were nominated in partisan primary elections, the failure to designate party affiliation or nonaffiliation on the general election ballot denies the independent candidate the opportunity to express to the Ohio electorate his nonaffiliation and to further express his method of nomination. Ohio Revised Code Section 3505.04 also inappropriately suggests that the candidates in the general election are running for election without political party support.

Complaint, at 4. On September 5, the Defendant moved to dismiss.

In his Motion for Preliminary Injunction, the Plaintiff relies heavily on the recent Sixth Circuit decision in *Rosen v. Brown,* 970 F.2d 169 (6th Cir.1992). In *Rosen,* the court found Ohio Rev.Code § 3505.03, which prohibits nonparty candidates for nonjudicial elective office from having the designation Independent or Independent candidate placed on the ballot next to their name, to be violative of the First and Fourteenth Amendments to the United States Constitution. The question for this Court to decide is whether *Rosen's* reasoning applies to Ohio's *judicial* ballot requirements.

## I. THE PRELIMINARY INJUNCTION

■ It is well settled that in order for a preliminary injunction to issue, a plaintiff

1. Haffey's opponents in the election are Democrat Robert H. Gorman and Republican Thomas J. Moyer, the incumbent. Both were nominated in the primary election.

2. All facts stated herein are those as alleged by Plaintiff in his Complaint and Motion for Preliminary Injunction.

124

must establish the following criteria: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction will harm others; and (4) whether the public interest will be served by the injunction. *International Longshoremen's Ass'n Local 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 903 (6th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 63, 116 L.Ed.2d 38; *Tyson Foods, Inc. v. McReynolds*, 865 F.2d 99, 101 (6th Cir.1989); *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 262 (6th Cir.1988); *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985); *In re De Lorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985). The four factors used to determine the efficacy of a preliminary injunction motion are not prerequisites to a successful motion; rather, they are merely elements to be balanced in relation to one another, with no single element being dispositive. *De Lorean Motor Co.*, 755 F.2d at 1229. Thus "the degree of likelihood of success may depend on the strength of the other factors." *Id.* Moreover, the strength of the "likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent the injunction." *Id.* (quoting *Metropolitan Detroit Plumbing & Mechanical Contractors Assn. v. HEW*, 418 F.Supp. 585, 586 (E.D.Mich.1976)); *Schalk v. Teledyne, Inc.*, 751 F.Supp. 1261, 1264 (W.D.Mich.1990). However, where it is shown that the burden imposed upon a defendant by the issuance of a preliminary injunction would be equivalent to that suffered by a plaintiff, the plaintiff must show a strong probability of success on the merits in order to prevail. *Frisch's Restaurant*, 759 F.2d at 1270; *In re De Lorean*, 755 F.2d at 1229; *Schalk*, 751 F.Supp. at 1264. Thus the flexibility traditionally afforded examination of the foregoing factors is tempered by the need to analyze carefully the dynamics of the injury claimed by each of the parties in the case. *Schalk*, 751 F.Supp. at 1264 (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 103 (6th Cir.1982)).

With this standard in mind, the Court now considers the Plaintiff's motion.

■ The Supreme Court stated several years ago that "the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections," and that "[e]ach State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen." *Sugarman v. Dougall*, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973) (citations and internal quotation omitted). Furthermore, the Supreme Court has recognized that "as a practical matter, there must be a substantial regulation of elections if they are going to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1278, 39 L.Ed.2d 714 (1974). However, a state's broad power to regulate elections is not unlimited; it must still "observe the limits established by the First Amendment rights of the State's citizens." *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986).

The questions presented in a case such as this cannot be resolved by applying a "litmus-paper test", and there is no self-executing rule that is a substitute for the "hard judgments that must be made." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1278, 39 L.Ed.2d 714 (1974). Rather, this Court must follow the inquiry laid out by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983):

[A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to bur-

den the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* at 789, 103 S.Ct. at 1570.

The first step in the *Anderson* analysis is to consider the character and magnitude of the alleged injury to Plaintiff's First and Fourteenth Amendment rights. Here, the state regulation at issue does not prevent Haffey from placing his name on the ballot; rather, Haffey argues that despite the appearance of his name on the ballot, the "voting cue" provided by the primary election furnishes to the Republican and Democratic candidates an unfair means of informing the public of their party affiliation. Conversely, Haffey argues that the absence of any party affiliation notation on the ballot unfairly implies that *no* candidate is affiliated with a political party, and denies to him the ability to inform the electorate of his nonaffiliation.

Fatal to Haffey's claim is the fact that no competent evidence was presented at the hearing to establish his contention that independent candidates in judicial elections suffer any injury, especially an irreparable one. Along with a complete lack of empirical evidence to support his claim, the Plaintiff's position defies logic: In order to establish irreparable injury, the Plaintiff must establish that his election to the Ohio Supreme Court is made less likely due to the existence of the primary election. However, in the primary election, registered Democrats vote for Democrats and registered Republicans vote for Republicans. To accept that Haffey is injured under the current scheme would require this Court to assume that if Haffey is identified on the general election ballot as an "independent" candidate, large numbers of *registered* Republicans and *registered* Democrats would vote for Haffey rather than the candidate nominated by their own party. This the Court declines to do—at least in the absence of empirical evidence to the contrary.

Furthermore, while it may be true that independent voters are denied the opportunity that party-affiliated voters receive to identify "their" candidate through the primary election system, the evidence presented by the state establishes that a relatively small percentage of registered voters actually participate in the state's primary election. Thus, Haffey has available to him the same means available to the party-affiliated candidates to inform the majority of the electorate of his non-affiliation: radio and television advertising, direct mailings, billboards, placards, etc. Besides, the ballot is "not a vehicle for communicating messages; it is a vehicle only for putting candidates and laws to the electorate." *Georges v. Carney,* 691 F.2d 297, 301 (7th Cir.1982).

Next, the Court must consider the precise interests asserted by the state in support of its statute prohibiting candidates in judicial elections from identifying their political party affiliation on the general election ballot. The state herein has asserted one significant interest: the desire of the state—at least to the extent possible—to keep politics out of the general judicial election. While the Plaintiff has attempted to discredit the state's asserted interest by pointing out that the election is extremely partisan in many respects,[3] the Court does not believe that this serves to lessen the importance or the sincerity of the state's interest. Rather, the state's position appears to be that of a compromise between the desire to keep politics out of the judiciary and the desire to preserve the party system.

Finally, the Court must balance Plaintiff's injury against the interests advanced by the state in support of its statute. While this Court has never hesitated to reject a state's asserted interests where it appears that the state's assertion is merely an insincere *post hoc* rationalization, *see*

---

3. For example, along with the nomination of judicial candidates by the political parties in the primary election, Plaintiff Haffey also entered into evidence documents establishing the large amount of campaign contributions made by the political parties to their respective judicial candidates.

*Brill v. Hedges,* 783 F.Supp. 340, 344–46 (S.D.Ohio 1991) (Kinneary, J.) (finding Ohio statute to be unconstitutional after concluding that the asserted state interests were "insincer[e]" and that the statute at issue was "most assuredly not related to the realization of any state interest"), the Court finds the interests asserted by the state in support of Ohio Rev.Code § 3505.04 not only to be sincere, but also to fully justify any small injury to Plaintiff's rights.

■ Along with the Plaintiff's failure to establish a likelihood of success on the merits and that he will suffer irreparable injury, the Court believes that the issuance of an injunction would harm others and would not be in the public interest. The state has presented credible evidence to this Court establishing that the printing of ballots for the November election is nearly complete, and that any reprinting at this point would not only be expensive, but would lead to "chaos." This harm certainly outweighs any unsubstantiated injury which Haffey claims to suffer.

Finally, the Court notes that the Sixth Circuit's *Rosen* decision is distinguishable on its facts and does not require the issuance of the relief requested by Haffey.[4] In *Rosen,* the Sixth Circuit held that Ohio's practice of allowing only Republican and Democratic candidates in the general partisan election to identify their party affiliation on the ballot violated independent candidates' constitutional rights under the First and Fourteenth Amendments. Although vaguely similar, the differences between the case *sub judice* and *Rosen* are numerous. First, the plaintiff in *Rosen* presented several unrebutted experts who testified that such a voting cue *on the ballot itself* makes it virtually impossible for independent candidates to prevail in the general election. There is no such evidence currently before the Court, and indeed, the alleged "voting cue" in this case is of a very different caliber since it appears five months before the general election rather than on the general election ballot itself. Second, the state in *Rosen* was unable to identify a legitimate interest in its partisan ballot requirement, whereas here the state interest is both important and legitimate. Thus, the situation facing this Court today involves both a weaker voting cue and a stronger state interest than was present in *Rosen.*

Given all of the above, the Court concludes that the public interest will not be served by the issuance of the injunction, and that it must therefore be DENIED.

## II. THE MOTION TO DISMISS

■ The purpose of a motion under Fed. R.Civ.P. 12(b)(6) is to test the sufficiency of the complaint. When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972); *Roth Steel Prods. v. Sharon Steel Corp.,* 705 F.2d 134, 155 (6th Cir. 1983). Although the court must liberally construe the complaint in favor of the party opposing the motion to dismiss, *Kugler v. Helfant,* 421 U.S. 117, 125–26 n. 5, 95 S.Ct. 1524, 1531–32 n. 5, 44 L.Ed.2d 15 (1975); *Davis H. Elliot Co. v. Caribbean Utils. Co.,* 513 F.2d 1176, 1182 (6th Cir. 1975); *Ott v. Midland–Ross Corp.,* 523 F.2d 1367, 1369 (6th Cir.1975), it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Blackburn v. Fisk Univ.,* 443 F.2d 121, 124 (6th Cir.1971); *Sexton v. Barry,* 233 F.2d 220, 223 (6th Cir.1956). The court will, however, indulge all reasonable inferences that might be drawn from the pleading. *Fitzke v. Shappell,* 468 F.2d 1072, 1076–77 n. 6 (6th Cir.1972).

---

**4.** In *Rosen,* the Sixth Circuit appears to have anticipated Haffey's situation when it stated that "[w]ith respect to the political designations of the candidates on ... the ballot, a State could wash its hands of such business and leave it to the educational efforts of the candidates themselves, or their sponsors, during the campaigns." *Rosen,* 970 F.2d at 175.

■ When determining the sufficiency of a complaint in the face of a motion to dismiss, a court will apply the principle that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). *See also McLain v. Real Estate Bd.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, *Roth Steel Prods.*, 705 F.2d at 155; *Sims v. Mercy Hosp.*, 451 F.2d 171, 173 (6th Cir.1971), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686; *McDaniel v. Rhodes*, 512 F.Supp. 117, 120 (S.D.Ohio 1981). Extrinsic evidence cannot be considered in determining whether a complaint states a claim upon which relief can be granted. *Roth Steel Prods.*, 705 F.2d at 155; *Sims*, 451 F.2d at 173.

■ A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *United States v. School District*, 577 F.2d 1339, 1345 (6th Cir.1978). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir.1982); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The court will grant a motion for dismissal under Rule 12(b)(6) only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *See generally Rauch v. Day & Night Mfg.*, 576 F.2d 697, 702 (6th Cir.1978); *Ott*, 523 F.2d at 1369; *Brennan v. Rhodes*, 423 F.2d 706 (6th Cir.1970).

■ Despite this Court's finding that the Plaintiff has not established a likelihood of success on the merits of his Complaint, the Court is unable to dismiss this action for failure to state a claim. While the Plaintiff has not yet established that the current election scheme in Ohio works to the disadvantage of independent candidates, he must be given an opportunity to gather such evidence through the discovery process. While this case might very well be appropriate for summary judgment upon the close of discovery, it is not appropriate for dismissal under Rule 12(b)(6).[5]

WHEREUPON, upon consideration and being duly advised, the Court finds Plaintiff's motion for a preliminary injunction and Defendant's motion to dismiss to be without merit, and they are, therefore, DENIED.

IT IS SO ORDERED.

---

**5.** The Court notes that although the denial of the requested preliminary injunction may foreclose the Plaintiff from obtaining relief prior to the 1992 election, the action may still be maintained beyond November if the Plaintiff certifies that he plans to participate in future judicial elections. *See Rosen*, 970 F.2d at 172–173.